UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MATTHEW S. JOHNSON,

                        Plaintiff,

    -against-                                                1:11-CV-1035 (LEK/DRH)

UNITED STATES OF AMERICA,

                        Defendant.

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

On August 30, 2011, Matthew S. Johnson ("Plaintiff") brought this action against Defendant, the United States of America ("Defendant" or "Government"), under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Dkt. No. 1 ("Complaint"). Plaintiff alleges that Defendant failed to maintain the steps on the premises owned by Defendant and located at 822 River Road, Glenmont, NY 12207 and that this negligence caused Plaintiff to suffer personal injury and loss of employment. Id. ¶¶ 8-12. On November 2, 2011, in lieu of an Answer, Defendant filed the instant Motion to dismiss for lack of subject matter jurisdiction. Dkt. No. 4 ("Motion"). Plaintiff filed a Response in opposition to Defendant's Motion, and Defendant filed a Reply. Dkt. Nos. 6 ("Response"), 7 ("Reply"). For the reasons that follow, the Court grants Defendant's Motion and dismisses Plaintiff's Complaint without prejudice.

**II.    BACKGROUND**

As an initiative under the Workforce Investment Act of 1998, 29 U.S.C. §§ 2801-2945, Job Corps Centers provide economically disadvantaged youth with residential education services and vocational training. Dkt. No. 5 ("Semansky Affidavit") ¶ 1. The Job Corps program is 100%

federally funded, but many Centers are operated by contractors. Id. ¶¶ 1-2.

At all times relevant to this proceeding, Defendant has owned the premises located at 822 River Road, Glenmont, NY 12077. Compl. ¶ 4. This location is the site of the Glenmont Job Corps Center ("Center"). Id. On December 1, 2004, Defendant, through Joseph Semansky, a Contracting Officer of the United States Department of Labor, Office of Youth Services/Job Corps, awarded Adams and Associates ("Adams") a Contract to operate the Glenmont Job Corps Center. See December 2004 Contract Award between U.S. Dept. of Labor and Adams Associates for Glenmont Job Corps Center (Dkt. Nos. 4-3 to 4-6) ("Contract").

In or around 1998, Plaintiff was employed by Adams. Plaintiff's Standard Form 95 Claim for Damage, Injury, or Death (Dkt. No. 4-8) ("Form 95") at 2. In or around 2005, Plaintiff began working for Adams at the Glenmont Job Corps Center. Id. And on March 11, 2009, Plaintiff was employed as the Center's Social Development Director. Compl. ¶ 3. At approximately 9:30 p.m. on March 11, 2009, Plaintiff was descending steps leading from the Center's main entrance to its recreation building when the heel of Plaintiff's shoe got caught on a missing piece of the Center's exterior steps. Id. ¶ 12. Plaintiff twisted his left ankle and felt pain in his left knee. Form 95 at 4. Plaintiff was unable to see that part of the step was missing, and there were no "warnings, signs or barriers" to give notice that the step was broken. Compl. ¶¶ 12-13.

Plaintiff was initially placed in a knee brace and given crutches. Form 95 at 3. However, on October 7, 2009, Plaintiff underwent surgery on his knee and subsequently developed two blood clots that required additional treatment. Id. at 4. Since the March 11, 2009 injury, Plaintiff has been hospitalized several times, and Plaintiff continues to experience pain and weakness in the affected leg, has trouble sleeping, and relies on the use of a brace and cane. Id. Due to his injuries, Plaintiff

2

has been unable to work and has been receiving Workers' Compensation benefits. Id. at 5.

Plaintiff alleges that Defendant was responsible for keeping the Glenmont Job Corps Center, including the exterior stairs and steps of the Center, free from "defective, hazardous and dangerous conditions." Compl. ¶¶ 9-10. Accordingly, Plaintiff filed a claim for damages with the Department of Labor's Employment and Training Administration ("DOL"). See generally Form 95. The DOL denied Plaintiff's claim on the grounds that the Glenmont Job Corps Center was run by a contractor and so the United States had not waived its sovereign immunity under the FTCA. See Dkt. No. 4-7.

### III.  STANDARD OF REVIEW

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a case for lack of subject matter jurisdiction. FED R. CIV. P. 12(b)(1). The court must then dismiss the claim if the "court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. Id.

A Rule 12(b)(1) motion may attack either the "facial sufficiency of the pleadings" or the "existence of subject matter jurisdiction in fact." Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002) aff'd 346 F.3d 357 (2d Cir. 2003). The Court must "accept as true all material factual allegations in the complaint;" however, the Court will not draw inferences in favor of the party asserting jurisdiction. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 130 (2d Cir. 1998). Additionally, when confronted with a factual challenge, the Court may "examine extrinsic evidence submitted with the motion" and may also make "any findings of fact necessary" to determine whether the court has subject matter jurisdiction. Dow Jones, 237 F. Supp. 2d at 404. Nevertheless, courts have frequently required that "the party asserting jurisdiction be permitted

3

discovery of facts demonstrating jurisdiction, at least where the facts are peculiarly within the knowledge of the opposing party." Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

**IV.   DISCUSSION**

Plaintiff brings this negligence claim against Defendant pursuant to the FTCA. See Compl. ¶ 1. The FTCA creates a limited waiver of the United States' sovereign immunity, granting District Courts jurisdiction over claims for "injury or loss of property, or personal injury or death caused by the negligent or wrongful" acts of Government employees. See FTCA, 28 U.S.C. § 1346(b)(1). An "employee of the government" includes "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency." Id. § 2671. However, the FTCA waiver of sovereign immunity does not extend to independent contractors. See id.; Leone v. United States, 910 F.2d 46, 49 (2d Cir. 1990).

**A. Independent Contractor Status – Maintenance**

Defendant argues that Adams acts as an independent contractor in operating the Glenmont Job Corps Center and so the Government has not waived its sovereign immunity. See Dkt. No. 4-2 ("Defendant's Memorandum") at 6-9. In evaluating whether Adams should be considered a government employee or independent contractor under the FTCA, the Court must apply federal agency law. See Leone, 910 F.2d at 49 (citing Logue v. United States, 412 U.S. 521, 528 (1973)). The relevant factors in "distinguishing an agency from a contractor [are] the power of the Federal Government 'to control the detailed physical performance of the contractor,'" or to supervise the contractor's "day-to-day operations." United States v. Orleans, 425 U.S. 807, 814-815 (1976) (quoting Logue, 412 U.S. at 528).

In evaluating these factors, the Court must focus on the terms of the Contract between Defendant and Adams. See Moreno v. United States, 965 F. Supp. 521, 524 (S.D.N.Y. 1997). It is a generally accepted principle of contract law that, where the terms of the contract are unambiguous, the Court should enforce the agreement's plain meaning. See, e.g., PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996).[1] In so doing, the Court must give "full meaning and effect to all" provisions in the Contract so as to interpret it according to the "intent of the parties." Id.

Defendant's agreement with Adams refers to Adams as a "contractor" in its operation of the Glenmont Job Corps Center. Contract at 3. The Contract requires Adams to "establish and maintain a system for facilities maintenance" and to conduct the program in a setting that is "clean, well maintained, and safe." Id. at 6, 16-17. The Contract also incorporates the Job Corps' Policy and Requirements Handbook ("PRH"), specifically referencing §§ 5.9, 5.10, and 5.11. Id. at 8, 16-17. Section 5.11 of the PRH requires Adams to "maintain the buildings, grounds, roads, sidewalks, and equipment" of the Center in a safe condition, "free of hazards" by developing "[w]ritten preventive maintenance procedures," procedures to obtain assistance and perform emergency maintenance work, and procedures for completing rehabilitation projects. See Dkt. No. 4-7 ("PRH") at 5.11-1. Therefore, the "responsibility to keep the stairs free from hazardous conditions rested with" Adams and not Defendant. Brown v. United States, No. 10 Civ. 7758, 2011 WL

---

[1] Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997) ("Contract terms are considered ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.") (internal citation omitted).

1676327, at *3-4 (S.D.N.Y. May 3, 2011).[2]

The plain language of the Contract shows that Defendant delegated responsibility for maintenance of the facilities to Adams, and there is no evidence that Defendant in fact retained day-to-day or substantial control over Adams's maintenance of the steps. As such, Adams was an independent contractor, and Defendant has not waived its sovereign immunity.

### B. Independent Contractor Status – Rehabilitation

Plaintiff argues that Defendant has waived its sovereign immunity because the stairs at issue were so deteriorated as to require "rehabilitation" rather than maintenance, and Adams was "not an 'independent contractor' with respect to construction and rehabilitation of the Government owned property." Resp. at 3. It appears that Plaintiff premises its argument not on Defendant having control of the Center's "day-to-day" operations, but rather on Defendant controlling the "performance" of any needed rehabilitation.[3]

Plaintiff interprets PRH § 5.10 as granting Defendant (through the National Director of Job Corps) control over "*all* functions" related to how "facility rehabilitation, construction, and

---

[2] In Brown, the Court found that the provisions of PRH §§ 5.9, 5.10, and 5.11 established that the independent contractor exception applied, and so there was no waiver of the Government's sovereign immunity where the plaintiff had fallen on a broken step at the South Bronx Job Corps Center and there was no evidence of day-to-day government supervision. Id.; see also Barna v. United States, No. 07-CV-622A, 2008 WL 2704347 (W.D.N.Y. July 2, 2008) (reaching same conclusion where plaintiff was injured after falling on icy sidewalk at Iroquois Job Corps Center); but cf. Pelchy v. U.S., 549 F. Supp. 2d 198 (N.D.N.Y. 2008) (finding factual issue as to whether independent contractor hired by the Government to maintain and repair a federal building was solely responsible for defective property condition alleged).

[3] See Resp. at 3 (admitting that "While Adams administered the Job Corps *Programs* on a day-to-day basis, it had no such authority nor was it compensated for structural repairs or replacement of the Government owned buildings.") (emphasis in original); id. at 4 (stating that Defendant retained a "preclusive degree" of "control over construction and rehabilitation" of the Center).

maintenance" is "determined, prioritized and paid for," whereby Adams has "no authority or funding to perform any such project of its own accord." Id. at 5-6.  However, this conclusion is contrary to the plain language of the Contract.  The PRH provides for government oversight of rehabilitation funding for the purposes of ensuring that "systematic" improvements and upgrades are accomplished in a "timely, and cost-effective manner."  PRH at 5.10-2.  Furthermore, the PRH outlines procedures for Adams to follow in order to receive approval to perform construction or rehabilitation projects.  Id.

Plaintiff's conclusion also ignores the extent of Government control required to overcome the independent contractor exception, as laid down by the Supreme Court in Orleans.  In Orleans, the Government had the ability to withhold funding, to require compliance with "voluminous regulations," and to require the contractor to obtain pre-approval from the Government for programs.  See 425 U.S. at 811-12.  However, the Supreme Court concluded that the independent contractor exception still applied because the question is not whether the "agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government."  Id. at 815.[4]  Therefore, the requirement that Adams comport with government procedures for obtaining rehabilitation funding and undertaking rehabilitation projects does not amount to the level of control required to overcome the independent

---

[4] See also Burke v. United States, No. 096 Civ 2470, 1996 WL 671151, at *2 (S.D.N.Y. Nov. 19, 1996) (concluding that the government could not be held liable when plaintiff fell on a broken piece of sidewalk, although the government had the authority to approve price for repairs, because the "contract clearly contemplated" that the contractor would be responsible for taking steps to maintain safety"); Berghoff v. United States, 737 F. Supp. 199, 202 (S.D.N.Y. 1989) (stating that a contract that allowed for government safety inspections and required government preapproval of progressive stages of a construction project constituted insufficient government supervision to make an independent contractor a federal agent).

contractor exception.[5]

Critically, Plaintiff has made no allegations that Defendant in fact controlled Adams' performance of any needed rehabilitation on the steps: Plaintiff has not alleged that Adams was denied funding for rehabilitation, or even that Adams requested funding to repair the steps; Plaintiff has not alleged that Adams made Defendant aware of the deteriorated steps; and Plaintiff has provided no photographic or other evidence in support of its contention that the steps required "rehabilitation" rather than maintenance. See Reply at 7. Although Plaintiff states it has not had the opportunity to conduct discovery, the burden of establishing subject matter jurisdiction is on Plaintiff, and Plaintiff has not alluded to how discovery of the "age of the staircase"[6] would allow it to show that Defendant controlled the rehabilitation of the Glenmont Job Corps Center. See id.[7]

---

[5] Plaintiff's other control arguments are similarly unpersuasive. Plaintiff emphasizes Defendant's right to conduct "facility survey[s]," see Resp. at 8; however, Plaintiff notes that these surveys were "sporadic at best," id., which only reinforces the purpose of these surveys in establishing "funding requirements and priorities," PRH at 5.10-1, not in controlling the performance of rehabilitation. Similarly, Plaintiff's argument that Defendant retains control of "Construction and Rehabilitation" because no funds are provided under the Contract, Resp. at 7, ignores that the Contract merely provides financial "Estimated Costs" for forecasted rehabilitation requirements. Contract at 27-28. And, while the National Director of Job Corps has approval authority for changes to egress, see Resp. at 5; PRH at 5.10-2, in instances where a "failure to immediately effect a repair" may endanger "health and well-being," Regional Directors may grant a contractor's request and authorize funds to perform "Emergency Repairs or Replacements." PRH at 5.10-2. Therefore, the language in the Contract does not grant Defendant control over the actual performance of any needed rehabilitation.

[6] If anything, the period of time over which Adams has operated the Glenmont Job Corps Center suggests that Adams should have had the opportunity to maintain the steps in good order and to have obtained any needed funding to make rehabilitative corrections.

[7] Gualandi v. Adams, 385 F.3d 236, 245 (2d Cir. 2004) (finding that the district court did not abuse its discretion in refusing the plaintiff's request for discovery in order to defeat motion to dismiss for lack of subject matter jurisdiction where plaintiff did not demonstrate discovery would resolve jurisdictional issue).

8

The Contract clearly contemplates that Adams would be responsible for the safety of the Glenmont Job Corps Center,[8] and there is no evidence that Defendant's retaining discretion over the approval of repair estimates was intended to give Defendant control over the performance of the Contract. Consequently, Plaintiff has not met his burden of establishing that it is more likely true than not that Defendant controlled Adams' performance of any needed repairs to the steps. Therefore, Defendant has not waived its sovereign immunity, and the Court must dismiss Plaintiff's claim for lack of subject matter jurisdiction.

### C. Landlord Status

Alternatively, Plaintiff contends that the Court has subject matter jurisdiction because the independent contractor exception does not apply to Defendant in its role as "either a landlord or a possessor of the property." Resp. at 10. The United States' liability, when its immunity is waived, is determined by the tort law of the state where the alleged negligence occurred. See 28 U.S.C. § 1346(b)(1); Robinson v. U.S. Bureau of Prisons, 244 F. Supp. 2d 57, 64 (N.D.N.Y. 2003). Under New York law, an owner or lessor in control of a property has a duty to exercise reasonable care. See Turrisi v. Ponderosa, Inc., 578 N.Y.S.2d 724, 726 (N.Y. App. Div. 1992). And, where premises are open to the public, an owner has a nondelegable duty to provide the general public with a "safe means of ingress and egress." Backiel v. Citibank N.A., 751 N.Y.S.2d 492, 505 (N.Y. App. Div. 2002).

Here, Plaintiff cites district court cases from the Third and Eighth Circuits in asking the Court to make a threshold determination that, as owner of the Glenmont Job Corps Center property,

---

[8] Adams agreed to provide a "safe training, living and working environment," Contract at 17, "for students and staff." PRH 5.11-1.

Defendant retained sufficient control over the premises for the Court to impose a "duty to provide safe premises to the plaintiff." See Resp. at 10. However, the mere existence of a nondelegable duty does not provide jurisdictional grounds for a claim against the United States. See Flanagan v. United States, 430 F. Supp. 2d 106, 114 (W.D.N.Y. 2006) (collecting cases).[9] Further, both cases that Plaintiff cites found, as a necessary prerequisite to holding the Government liable for a nondelegable duty, that the Government had waived its sovereign immunity.[10]

The Court has already established that Defendant did not waive its sovereign immunity here. See discussion supra Parts A, B. Accordingly, the fact that the United States owned or possessed the property on which Plaintiff was injured is – standing alone – insufficient to give the Court jurisdiction over Plaintiff's claim. As a result, Plaintiff has not met its burden of proof in establishing that the Court has subject matter jurisdiction.

---

[9] See also Roditis, 122 F.3d at 111 (stating that, even where a duty is nondelegable under state law, that duty cannot "override the United States' sovereign immunity from suits for injuries caused by its independent contractors."); McCutcheon v. United States, No. 94-CV-0596E, 1996 WL 607083, at *5 (W.D.N.Y. Oct. 15, 1996) (concluding that imposing a nondelegable duty on the Government where it had delegated responsibility for maintaining the premises in a safe condition to an independent contractor exceeded the waiver of the Government's sovereign immunity under the FTCA).

[10] See Resp. at 10; Greene v. United States, 745 F. Supp. 1486 (E.D. Mo. 1990); Gotha v. United States, 929 F. Supp. 207 (D.V.I. 1996) rev'd on other grounds, 115 F.3d 176 (3d Cir. 1997). In Greene, the independent contractor exception did not apply because the Government conceded that the United States "owned, managed, maintained, and controlled the St. Louis Job Corps Center property." 745 F. Supp. at 1488. Therefore, the Government had waived its immunity and retained the requisite control to be a "landlord or possessor" with a "duty to provide safe premises to plaintiff." Id. Similarly, in Gotha, the government waived immunity because the language of the contract specifically reserved to the Government responsibility for "construction and modification of the facilities," which included "the installation of [the] stairs, lighting, and handrails" that were at issue in the plaintiff's injury. 929 F. Supp. at 211-212. Accordingly, the government could be held responsible for a nondelegable duty. See id. No such waiver or contractual language is present in this case, making the reasoning from Greene and Gotha inapposite here.

## V.  CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to dismiss (Dkt. No. 4) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:     July 17, 2012
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge